**SO ORDERED.**

**SIGNED this 19 day of August, 2010.**



*Dale L. Somers* (signature)
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

___

Opinion for on-line use, but not print publication
# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re:<br><br>ELZORA NADINE PROUTY,<br><br>　　　　　DEBTOR. | CASE NO. 08-11757<br>CHAPTER 7 |
| ELZORA NADINE PROUTY,<br><br>　　　　　PLAINTIFF,<br><br>v.<br><br>JP MORGAN CHASE & CO.;<br>THE EDUCATION RESOURCE<br>INSTITUTE; AMERICAN EDUCATION<br>SERVICES; and DIVERSIFIED<br>COLLECTION SERVICES, INC.,<br><br>　　　　　DEFENDANTS. | ADV. NO. 08-5233 |

### MEMORANDUM OPINION AND ORDER
### DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This case commenced with Debtor filing her Complaint to Determine Debt to be Dischargeable, in which she contends that her obligations to the defendants in her capacity as co-signer of her daughter's student loans are dischargeable. The matter under advisement is the Plaintiff/Debtor's motion for summary judgment against Defendant Education Resource Institute d/b/a/ TERI (hereafter "TERI"). Debtor appears by Levi H. Goossen. TERI appears by Shannon D. Wead and Terry C. Cupps, of Foulston Siefkin LLP. There are no other appearances.[1] The Court has jurisdiction.[2]

**FINDINGS OF UNCONTROVERTED FACT.**

### A. FACTS PRESENTED BY DEBTOR WHEN MOVING FOR SUMMARY JUDGMENT WHICH TERI DID NOT CONTROVERT.

When moving for summary judgment, Debtor Prouty submitted 13 statements of fact.[3] Those facts which TERI did not controvert are summarized as follows. Debtor Prouty is the cosigner of 12 promissory notes with her daughter, Lindsay Harbin. All of the loans were made by banks under their loan programs and were insured or guaranteed by Defendant TERI. Debtor did not receive any of the loan proceeds and received no financial benefit from any of them. The

---

[1] By order filed on April 8, 2009, a default judgment was granted as to Defendants JP Morgan Chase & Co. and Diversified Collection Services Inc. Defendant American Education Services a/k/a AES on April 13, 2009 filed a disclaimer of interest.

[2] This Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (b), and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. Furthermore, this Court may hear and finally adjudicate this matter because it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). There is no objection to venue or jurisdiction over the parties.

[3] Debtor's Brief in Support of Motion for Summary Judgment, Doc. 58, pp. 1-2. That brief did not reference the evidence supporting her statements of fact. When replying to TERI's response, which did not controvert the facts stated below even though they were not properly supported, Debtor cited exhibits in support of her statements of fact.

2

total obligation of the notes as of August 3, 2009 was $180,887.55. Lindsay Harbin is in default on her payments, and TERI has made demand for payment.

### B. ADDITIONAL STATEMENTS OF UNCONTROVERTED FACTS PROVIDED BY TERI.

TERI responded to Debtor's motion for summary judgment and provided additional statements of uncontroverted facts. Debtor did not attempt to controvert the following statements:

> 16. TERI's role in the programs was primarily as guarantor of the loans in the event of default by the borrowers. TERI is a nonprofit institution. Debtor was obligated to pay guarantee fees in connection with the twelve loans.
> . . . .
>
> 24. TERI has satisfied its obligation to the lenders pursuant to its guarantees. Upon payment by TERI, and pursuant to their respective contracts, the lenders assigned all rights, title, and interest in the loans and notes to TERI.[4]

The Court emphasizes that these facts were not presented by Debtor in support of her motion for summary judgment.

## CONCLUSIONS OF LAW.

### A. DEBTOR'S THEORIES THAT HER LIABILITY IS DISCHARGEABLE.

The theory of Debtor's motion for summary judgment is that her liability as co-signer of her daughter's student loans is not within the exception to discharge codified at 11 U.S.C. § 523(a)(8)(A). The subsection provides:

---

[4] Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Doc. 63, p. 7, ¶ 16, and p. 9, ¶ 24.

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt —
>
> . . . .
>
> > (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for —
> >
> > > (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution.

Rather than relying upon the undue hardship defense, Debtor asserts that her liability is not within the scope of the § 523(a)(8) exception to discharge because: (1) Her debt to TERI did not arise under a student loan; (2) TERI did not have a student loan program in place; (3) TERI is a nonprofit institution that did not fund any student loans; (4) Debtor is a non-student co-signer; and (5) the § 523(a)(8) exception is unconstitutional as applied to Plaintiff Debtor.[5]

### B. THE PLAINTIFF DEBTOR IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER THE FIRST, SECOND, OR THIRD OF THE FOREGOING THEORIES.

The first legal issue presented by Debtor's motion is whether her debt to TERI is for "an educational . . . loan . . . made under any program funded in whole or in part by a . . . nonprofit institution,"[6] as provided by § 523(a)(8)(A)(i). She contends her debt does not satisfy these criteria for nondischargeability because: (1) The debt is not for a student loan, (2) the loan was

---

[5] Doc. 58, pp. 3, 20, and 30.

[6] 11 U.S.C. § 523(a)(8)(A)(i).

4

not made pursuant to a student loan program, and (3) the loan was not funded by a nonprofit institution.

Debtor's motion for summary judgment under theories (1), (2), and (3) is denied because Debtor's memorandum presents no properly supported statement of uncontroverted facts making a prima facie case. Debtor's uncontroverted facts fail to address TERI's participation in the student loan programs under which the funds were provided.

Debtor asserts in her statement of fact paragraphs 9, 10 and 11 the following conclusions which TERI controverts:

> 9. The exception to discharge under § 523(a)(8) does not apply . . . because the promissory notes were not student loans made under a program funded in whole or in part by TERI, a nonprofit institution.
>
> 10. TERI did not have a student loan program in place within the meaning of § 523(a)(8).
>
> 11. TERI has not funded a student loan program within the meaning of §523(a)(8).

Initially, Debtor did not support the statements by any reference to exhibits, affidavits, testimony, or other evidence, as required by the rules governing summary judgment.[7] When replying to TERI's response, Debtor states that the promissory notes support her statements and cites *Celotex*,[8] stating that TERI has the burden of proof with respect to each of the three statements. In her brief, she states that because defendants have the burden of proof to establish the conditions for exceptions to discharge, in order to avoid summary judgment, TERI has the

---

[7] Although approximately 314 pages of "exhibits" were attached to Debtor's Brief in Support of Motion for Summary Judgment (Doc. 58), the statements of fact do not refer with particularity to the portions of the exhibits supporting her statements.

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

5

burden of proof to show that the facts and conclusion stated in paragraphs 9, 10, and 11 are not true.[9] This is not a correct statement.

In a leading treatise on federal procedure, the authors note that although *Celotex* was a five to four decision, the majority and dissent agreed how the summary-judgment burden of proof operates.[10] The authors go on to interpret the *Celotex* holding on which Debtor relies as follows:

> Further [in *Celotex*], the satisfaction of the moving party's summary-judgment burden was influenced by the fact that the nonmovant would bear the burden of proof at trial. When that was so, the moving party could make a proper summary-judgment motion in reliance on the pleadings and the allegation that the nonmovant had failed to establish an element essential to that party's case. Rule 56(e) then would require the opposing party to go beyond the pleadings to designate specific facts showing there was a genuine issue for trial. . . .
>
> In the dissenting opinion by Justice Brennan, he elaborated more fully on the way in which the burden shifts between the parties to the action, as well as how it can be satisfied. Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment. That can be satisfied, in cases in which the ultimate burden of persuasion at trial rests on the nonmoving party, either by submitting affirmative evidence negating an essential element of the nonmovant's claim or, as in Celotex, by demonstrating that the nonmoving party's evidence itself is insufficient to establish an essential element of its claim. As described by Justice Brennan, the moving party may make this showing by deposing the nonmoving party's witness, by establishing the inadequacy of documentary evidence or, if there is no evidence, by reviewing for the court what exists to show why that does not support a judgment for the nonmoving party. To this extent, the dissent agreed with the majority that the movant need not present affidavits or new

---

[9] Doc. 58, p.4.

[10] 10A Charles Alan Wright, Arthur R. Miller and Mary K. Kane, *Federal Practice and Procedure: Civil 3d*, § 2727 at 470 (1998).

Case 08-05233    Doc# 73    Filed 08/19/10    Page 6 of 20

> evidence of its own to meet its initial burden, but may premise its
> summary-judgment motion on an attack of the opponent's evidence.
> Once that is done, the burden shifts to the nonmoving party to call
> evidence to the attention of the court to dispute that contention.
> The dissent argued, however, that in Celotex itself defendant had
> not met this initial burden because it had ignored supporting
> evidence clearly contained in the record and thus had not
> demonstrated that no evidence existed to support plaintiff's claim.[11]

In this case, Debtor has not satisfied her burden under this procedure. She has not provided her own evidence showing TERI cannot prevail and also has not attacked TERI's evidence, as is required to make a prima facie showing that she is entitled to summary judgment.[12] She merely conclusively states, without any reference to the record, affidavits, exhibits, or testimony, that certain elements of Defendant TERI's claim are not true. She has not provided facts showing that TERI cannot prove that the debt is not covered by § 523(a)(8). Debtor's presentation is insufficient to shift the burden to TERI to show that there is evidence supporting its case. For her first, second, and third theories, Debtor's motion is denied on the basis that she did not present even a prima facie case under the summary judgment standards.

The motion as to these three theories is also rejected because the summary judgment pleadings show there are controverted issues of material fact as to dischargeability of the student loans. Rather than resting on the insufficiency of Debtor's motion for summary judgment, TERI responded and presented statements of additional fact, supported in accord with the summary judgment rules, concerning the student loan program and TERI's role in it.[13] The additional facts

---

[11] *Id*. at 471-72.

[12] *See* Fed. R. Bankr. P. 7056; Fed R. Civil P. 56(c)(2) (opposing party's obligation to respond arises when a motion for summary judgment is properly made and supported).

[13] Doc. 63, pp. 6-9.

which Debtor did not controvert are set forth above, and the additional facts which she attempted to controvert are the following:

> 14. There is no question Debtor's obligation arises from educational loans — albeit loans obtained for her daughter's primary benefit.
>
> 15. Those loans were made under loan programs that streamlined the loan process for borrowers and that were dependent upon the participation of various parties, including Bank One, Citizens Bank, TERI, and numerous others.
> . . . .
>
> 17. TERI and Bank One entered into an amended guaranty agreement on or about April 18, 2002. The agreement reflects that Bank One had established four separate loan programs to assist students and parents in financing the costs of higher education, and that upon Bank One's origination of certain loans conforming to the programs, The First Marblehead Corporation would structure special business trusts or other entities to purchase the promissory notes evidencing the loans. The guaranty agreement provides that TERI will guarantee loans Bank One makes to "eligible" borrowers under the programs after Bank One has exercised "due diligence" in the origination, underwriting, and other aspects of the loans that comply with the "program guidelines." The "program guidelines" set forth certain minimum creditworthiness criteria a prospective borrower under the program must satisfy as agreed in advance between Bank One and TERI.
>
> 18. Similarly, TERI and Citizens Bank had a guaranty agreement in which they had defined their respective rights and obligations, including TERI's guaranty of certain loans that satisfied the parties' agreed requirements for making such loans, including Citizens Bank's duty to exercise "due diligence" in making loans that fit within TERI's "program guidelines."
>
> 19. Bank One is a lender of student loans in which it is contemplated at the time of lending that its interest in the credit obligations will subsequently be transferred to National Collegiate Trust ("NCT") through the securitization process.
>
> 20. NCT is a business trust domiciled in Delaware and is the product of the securitization process. NCT's purpose is to

enhance the liquidity cycle in student lending by acquiring for consideration the student loan assets created by loan programs and returning to the lender proceeds of bond sales used to capitalize NCT for purposes of the asset tranfser ("securitization" as used hereinafter). The administrator of NCT is First Marblehead Data Services, Inc. ("FMDS"), pursuant to an Administration Agreement. FMDS, as the administrator, has retained the services of First Marblehead Education Resources, Inc. ("FMER") in the recovery of defaulted student loans pursuant to an Asset Management Agreement.

21. In the securitization, the student loans are transferred by Bank One and assigned to NCT for consideration. TERI places funds from each disbursement into a pledge account held by NCT. When NCT acquires the portfolio of loans, the benefit of the guaranty obligation passes from the lender to NCT with TERI's guaranty obligation remaining. If a borrower defaults on a loan made under this program, as held by NCT and guaranteed by TERI, funds from the TERI pledge fund are transferred to NCT to satisfy the default. TERI retains the right to recover the debt where its contingent-creditor status as guarantor materializes.

22. Debtor's loans with Bank One were included in securitizations as described above. The transfer for consideration of Debtor's Bank One loans was not an isolated debt purchase. Rather, it was one piece of a large-scale transformation of thousands of credit obligations into asset-backed securities for purposes of creating a secondary market for investors to assist in the perpetuation of the student lending liquidity cycle, without which many students are unable to procure educational financing.

23. Debtor's Citizens Bank loan was not included in a securitization. Instead, all rights and interest in the note were assigned directly to TERI upon its honoring of the guaranty after Debtor defaulted.[14]

In response to TERI's foregoing statements of fact with which she disagreed, Debtor merely stated, without any reference to material of evidentiary value, either: (1) The statements were

---

[14] *Id.* (supporting citations to record omitted).

"Controverted"; or (2) the statements were "Controverted. This is a mixed question of fact and law."[15] Under the rules applicable to summary judgment, these responses are insufficient to create a controversy.[16] Therefore, for the purpose of ruling on Debtor's motion, the statements could be regarded as uncontroverted. However, even if regarded as controverted, these additional facts are sufficient to deny Debtor's motion for summary judgment. TERI has not moved for summary judgment, and Debtor's motion must be denied if there are material facts in issue which, if decided in favor of TERI who opposes the motion, would be sufficient to rule against Debtor. The Court therefore regards the additional facts presented by TERI as controverted.

When the additional facts provided by TERI and case law are considered, the Court finds that Debtor has not established as a matter of law that her debt to TERI is not for "an educational . . . loan . . . made under any program funded in whole or in part by a . . . nonprofit institution." Those facts and case law make clear Debtor is not entitled to summary judgment.

Debtor's first theory, that the debt is not for a student loan, is easily rejected. The copies of the loan documents attached to Debtor's motion for summary judgment reflect that the Bank One loans were for undergraduate studies at Wichita Sate University and the Citizens Bank loan was for studies at Hallmark Institute of Photography. One of TERI's additional statements of uncontroverted facts states, "There is no question Debtor's obligation arises from educational loans — albeit loans obtained for her daughter's primary benefit." When arguing to the contrary in her brief, Debtor asserts the loans "were placements of money for the purpose of establishing

---

[15] Doc. 64, pp. 2-3.

[16] *See* Fed. R. Civ. Pro. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must — by affidavits or as otherwise provided by this rule — set out specific facts showing a genuine issue for trial.").

10

nondischargable loan debt to be primarily payable by nonstudents."[17] Debtor did not even present any factual statements in support of this argument. A trier of fact could find that the loans to Debtor's daughter were student loans.

Debtor's basic argument in support of her second and third theories is that TERI merely guaranteed bank loans and did not participate in a program that funded the debt. These arguments present issues concerning the construction of § 523(a)(8). The only authority cited by Debtor in support of her position that the student loan exception from discharge is not applicable in this case under this rationale is the bankruptcy court decision in *Taratuska*.[18] In that case, a student loan guaranteed by TERI was obtained through a student loan marketing service called TAG. The funds were advanced by a for-profit bank. After default, TERI honored its guarantee and obtained an assignment of the loan. The student borrower contended that the exception to discharge did not apply because the loan was not made under a program funded in whole or in part by a nonprofit institution. The bankruptcy court agreed. It rejected TERI's argument that the guaranty constituted program funding. It stated:

> A guaranty is generally understood to mean a promise to pay the debt of another who is liable in the first instance yet fails to pay the debt when due. Funding is generally understood to mean the advance of money to an individual, entity or venture for a specific purpose.[19]

---

[17] Doc. 58, p. 7.

[18] *Taratuska v. Education Resources Institute, Inc. (In re Taratuska)*, 374 B.R. 24 (Bankr. D. Mass. 2007).

[19] *Id.* at 29.

11

The court also rejected TERI's contention that the loan was made under a program funded in part by a nonprofit corporation, because it found a lack of evidence that TAG was a student loan program and because of TAG's business practices.

However, TERI appealed the *Taratuska* bankruptcy court judgment to the district court, which reversed.[20] The district court found that the first and second phrases of § 523(a)(8), which BAPCPA codified as subsections § 523(a)(8)(A)(i) and (ii), address different concerns, with the first being focused on loans made, insured, or guaranteed by governmental units, and the second being focused on loan programs funded in whole or in part by nonprofit institutions, a much broader category. The court noted that the courts that have interpreted the second phrase have uniformly found the statutory phrase "made under any program funded in whole or in part by a nonprofit institution" does encompass the role that nonprofit guarantors play.[21] It quoted with favor the determination of a California bankruptcy court that "Congress intended to include within § 523(a)(8) all loans made under a program in which a nonprofit institute plays any meaningful part in providing funds."[22] The district court concluded that "[w]hen Taratuska defaulted on the loan at issue, TERI paid it as a guarantor, which demonstrated that a nonprofit, TERI, funded the program."[23]

---

[20] *In re Taratuska*, 2008 WL 4826279 (D. Mass. 2008).

[21] *Id.* at *3.

[22] *Id.* at *4, (quoting Education Res. Inst., Inc. v. Hammarstrom (In re Hammarstrom)*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989)).

[23] *Id.*, 2008 WL 4826279 at *5.

TERI correctly points out that, in addition to the district court opinion in *Taratuska*, there are many cases[24] directly supporting its contention that Debtor's loans were made under programs partially funded by TERI. One of the cases is the Second Circuit's decision in *O'Brien*,[25] which was relied upon by the district court in *Taratuska*. The *O'Brien* court held, under circumstances similar to this case, that debtor O'Brien's obligation to TERI was within the exception to discharge. In 1994, pursuant to the Law Access Program, O'Brien received a student loan from KeyBank. The loan was guaranteed by TERI, but TERI did not provide any of the funds advanced to O'Brien by KeyBank. After O'Brien's default, TERI paid KeyBank and became O'Brien's creditor. O'Brien brought a declaratory judgment action, contending that the debt was dischargeable. The bankruptcy court found the debt could not be discharged because the word "funded" used in § 523(a)(8) encompassed any meaningful contribution to the loan, including a guarantee of the loan. The district court affirmed, finding that § 523(a)(8) focuses on loan programs, not individual loans, and that TERI actually did fund the loan when it paid KeyBank in accord with its guarantee obligation. The Second Circuit affirmed, stating:

> Section 523(a)(8) does not require that TERI fund O'Brien's loan in order for that section to be applicable. Rather, § 523(a)(8) requires only that O'Brien's loan was "made under any program funded in whole or in part by" TERI. While it may be true that TERI merely guaranteed, without funding, O'Brien's particular loan, it is an entirely different question whether TERI funded the loan *program* under which O'Brien's loan was made.[26]

---

[24] The Court declines to discuss each of these cases, and directs interested parties to the Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Doc. 63, pp. 10-11.

[25] *O'Brien v. First Marblehead Educ. Res., Inc. (In re O'Brien)*, 419 F.3d 104 (2nd Cir. 2005).

[26] *Id.* at 106.

13

This Court declines to follow the bankruptcy court decision in *Taratuska*, relied on by Debtor. Instead, it finds the majority position as illustrated by the Second Circuit in *O'Brien* and the district court in *Taratuska* to be the better reasoned construction of § 523(a)(8). An educational loan is made under a program funded in whole or in part by a nonprofit institution when a nonprofit corporation plays a meaningful role in the program by insuring the loans. A distribution of funds from the nonprofit institution to the borrower in not required.

Further, this Court rejects Debtor's arguments that the district court decision in *Taratuska*, although reversing the finding of dischargeablity, somehow supports her position. First, the district court decision in *Taratuska* does not represent a departure from prior cases upon which TERI relies in this case. *Taratuska* is an unpublished decision of a district court which followed the majority interpretation of § 523(a)(8), including *O'Brien*. Second, although it identified four categories of evidence supporting the conclusion that TERI did fund the program under which Taratuska received her loan, the court did not establish a mandatory four-part test which must be satisfied in every case. Iin this case, TERI does have the burden to show that it provided funding to the relevant loan program, but how it does so is not determined by the analysis in *Taratuska*.

For the foregoing reasons, the Court denies on the merits Debtor's motion for summary judgment under her first, second, and third theories relating to TERI's role in the loan transactions. A debt for a student loan comes within the exception to discharge of § 523(a)(8) when the loan was made under a program funded in whole or in part by a nonprofit institution. The statements of fact show that there are genuine issues of material fact and therefore, the Debtor is not entitled to judgment as a matter of law.

14

### C. THE PLAINTIFF DEBTOR IS NOT ENTITLED TO SUMMARY JUDGMENT UNDER HER FOURTH THEORY.

As her fourth theory, Debtor argues that she is entitled to summary judgment because she signed the student loans as a co-signer. The facts material to this defense are uncontroverted. Debtor signed each of the Bank One notes and the Citizens note as a co-signer. Debtor's daughter signed the same notes as the borrower. The purpose of the loans was to cover the cost of Debtor's daughter's education.

Section 523(a)(8) is silent as to whether a co-signer's liability on a student loan is excepted from discharge. The courts are divided on the question, and the briefs filed by the parties cite numerous cases in support of their respective positions. This Court's research has not located any reported decisions in the Tenth Circuit.

The cases cited in Debtor's memorandum are all bankruptcy court decisions.[27] *Kirkish*,[28] from the Western District of Michigan, is representative. In *Kirkish*, as in this case, the issue was whether "a non-student parent who is a co-maker on his child's educational loan may be discharged despite the statutory prerequisites otherwise imposed on students under 11 U.S.C. § 523(a)(8)."[29] The court held the debt could be discharged without a finding of undue hardship. After noting that the "literal language" of § 523(a)(8) "does not appear to limit itself to the student debtor only," the court concluded that "[the] legislative history, clearly focusing on the student's non-dischargeability, compels a narrow interpretation of what constitutes an educational

---

[27] Doc. 58, p. 20.

[28] *Kirkish v. Meritor Savings Bank (In re Kirkish)*, 144 B.R. 367 (Bankr. W.D. Mich. 1992).

[29] *Id*. at 368.

15

loan so as not to include co-makers or co-signers within 11 U.S.C. § 523(a)(8)."[30] The legislative history was summarized as follows:

> Legislative history suggests Congress was motivated by the idea that *students* who receive the benefit of educational loans should not be able to use the bankruptcy laws to avoid the responsibility of repayment. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 133 (1977), *reprinted* in 1978 U.S.C.C.A.N. 5787, 6094. Throughout the legislative history, reference is continually made to potential abuse by student debtors and "at no point does the legislative history refer to this debt being nondischargeable as against co-makers or co-debtors liable on the debt." *In re Boylen*, 29 B.R. [924,] 926 [Bankr. N.D. Ohio 1983)]. Instead, the legislative history alludes to the fact that co-makers are generally not required on educational loans. *Id*. "[U]nlike commercial transactions where credit is extended based on the debtor's collateral, income, and credit rating, student loans are generally unsecured and based solely upon the belief that the student-debtor will have sufficient income to service the debt following graduation." *In re Merchant*, 958 F.2d [738,] 740 [6th Cir. 1992)].[31]

The general rule of narrow construction of exceptions to discharge was also cited as a reason to find the parent's debt dischargeable.[32]

TERI cites numerous cases from bankruptcy courts, three district courts, and one court of appeals in support of its position that a co-signer's debt is within the exception to discharge.[33] The Third Circuit's 1993 decision in *Pelkowski*[34] is the most authoritative. Debtor Pelkowski listed among her debts seven loans guaranteed by the Ohio Student Loan Commission for the

---

[30] *Id.*

[31] *Id.* at 369.

[32] *Id.*

[33] Doc. 63, pp. 18-19.

[34] *In re Pelowski*, 990 F.2d 737 (3rd Cir. 1993).

16

educational expenses of her children. Debtor filed a complaint against the loan commission to determine dischargeability. The bankruptcy court ordered the debt discharged, finding § 523(a)(8) inapplicable to non-student co-makers of student loans. The commission appealed, and the district court reversed, agreeing "with the majority of recent bankruptcy court decisions which held that section 523(a)(8) applies equally to non-student co-makers and student makers."[35] Debtor appealed, and the Third Circuit, in a very thorough opinion, affirmed the district court. First, the court rejected debtor's argument that she should receive a discharge because she was not a student. It found "no support in the statutory language for any distinction based on the status of the borrower as student or as beneficiary of the education. Section 523(a)(8) does not refer to a 'student debtor' but applies to limit discharge of any 'individual debtor' from 'any debt' for a covered educational loan."[36] "Like other subsections of 11 U.S.C. § 523(a), section 523(a)(8) describes a particular kind of debt that is excepted from discharge."[37] Next, the court rejected debtor's principal argument that because she was only a co-maker, § 523(a)(8) did not apply. This argument was based upon the legislative history of the subsection and the failure of Congress to mention co-makers in § 523(a)(8). After careful review, the court agreed with the Sixth Circuit that "'Congress enacted . . . § 523(a)(8) in an effort to prevent abuses in and protect the solvency of the educational loan programs,'"[38] and concluded that this intent applied "both to single makers of loan notes and to co-makers, whether students or their parents or other co-

---

[35] *Id.* at 739.

[36] *Id.* at 741.

[37] *Id.*

[38] *Id.* at 743 (*quoting In re Merchant*, 958 F.2d 738, 742 (6th Cir. 1992)).

17

signers, as all may abuse the bankruptcy system or take advantage of legal loopholes."[39]  Failure to mention co-signers in the statute was not accepted as creating an ambiguity.  The absence of clear congressional intent to include co-signers was held not to be sufficient to resolve the question in debtor's favor, since in the view of the Third Circuit, the legislative purpose of preventing abuse could only be served if all student loans were subject to the exception to discharge.

      The Court finds the Third Circuit *O'Brien* opinion to be well reasoned.  Including the student loan debt of co-signers in the exception to discharge is the straight-forward interpretation of the statute and furthers the congressional purpose.  If this Court were to find that Debtor's liability for the student loans is outside the plain language of § 523(a)(8), it would be legislating, which it declines to do.  Courts universally hold that when a parent is the only person liable on a student loan for a child's educational expenses, the parent is subject to the nondischargeability standards of § 523(a)(8).[40]  The same construction should apply when the parent is a co-obligor.

      For the foregoing reasons, the Court denies Debtor's motion for summary judgment based upon the argument that § 523(a)(8) does not apply to her debt to TERI because she signed the notes as co-debtor and it was her daughter who received the direct benefit of the student loans.

      **D.  THE PLAINTIFF DEBTOR IS NOT ENTITLED TO SUMMARY JUDGMENT BASED UPON THE CONTENTION THAT § 523(A)(8) IS UNCONSTITUTIONAL AS APPLIED TO HER.**

---

[39] *Id*. at 744.

[40] *See* Lora C. Siegler, Annotation, *Applicability to Obligations of Nonstudent Co-obligors of Exception to Discharge in Bankruptcy for Educational Loans under 11 U.S.C.A. § 523(a)(8)*, 120 A.L.R. Fed 609 (1994).

Without citation to any authority and without elaboration, Debtor contends that application of § 523(a)(8) to her would violate due process because the statute provides no objective standard as to the meaning of student loan, student loan program, and funding. The Court rejects this contention.

Due process does not require that each term in a statute be defined. Statutes are presumed to be constitutional. The Tenth Circuit BAP stated as follows when rejecting a similar challenge to § 707(b):

> The debtor further argues that § 707(b) is unconstitutionally vague, and that the terms "primarily consumer debts," "consumer debts," and "substantial abuse" are so vague that they render the statute meaningless and unenforceable. . . .
>
> . . . [C]ivil statutes, such as § 707(b), are subject to less rigorous constitutional standards than criminal statutes, and . . . where First Amendment freedoms are not concerned, the rule is that a statute is unconstitutionally vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." [41]

The court held that "Section 707(b) does provide a standard, even though the details must be worked out by judicial decisions."[42] "Although § 707(b) unavoidably subjects debtors to judicial difference of opinion, it does not subject them to judicial whim without 'guidance or constraint.'"[43]

---

[41] *In re Stewart*, 215 B.R. 456, 464 (10th Cir. BAP 1997) (*quoting In re Higginbotham*, 111 B.R. 955, 965 (Bankr. N.D. Okla. 1990)).

[42] *Id.*

[43] *Id.*, (*quoting Higginbotham*, 111 B.R. at 966, *which quoted Yick Wo v. Hopkins*, 118 U.S. 356, 367(1889)).

19

The foregoing applied to this case leads the Court to conclude that while § 523(a)(8) might have been more specific, it is definite enough to pass constitutional muster in this regard. Debtor's motion for summary judgment based on the contention that § 523(a)(8) is unconstitutional as applied to her is denied.

**CONCLUSION.**

For the foregoing reasons, Debtor's motion for summary judgment is denied. The debt she owes to TERI as co-signor of the student loans will be held nondischargable unless Defendants fail to prove that the debt is for "an educational . . . loan . . . made under any program funded in whole or in part by a . . . nonprofit institution," or Debtor establishes undue hardship.

**IT IS SO ORDERED.**

# # #

20

Case 08-05233    Doc# 73    Filed 08/19/10    Page 20 of 20